UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN A. WILSON,

       Plaintiff,                      Case No. 11-12261

v.                                        District Judge Mark A. Goldsmith
                                          Magistrate Judge R. Steven Whalen

RUTH C. ROULEAU, ET AL.,

       Defendants.
_____/

### REPORT AND RECOMMENDATION

Before the Court is Defendant Ruth Rouleau's Motion for Summary Judgment [Doc. #32], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE as to Defendant Rouleau.

### I. FACTS

On May 24, 2011, Plaintiff Ryan A. Wilson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendant Rouleau, a Registered Nurse employed by the MDOC, was deliberately indifferent to his serious medical needs, in violation of the Eighth and Fourteenth Amendments. He also brings a state law claim of gross negligence.

Plaintiff makes the following allegations regarding Nurse Rouleau. Around May 11, 2009, Plaintiff was placed in the segregated housing unit at the Mound Correctional Facility, pending transfer to a different facility. On May 25, 2009, he awoke with "an

-1-

extremely painful sore throat." *Complaint*, Doc. #1, ¶ 19. A throat culture was taken around 3:40 p.m. that day, and at 11:45 p.m., still complaining of severe pain, he was taken to the Nurses' Station. *Id*. ¶ 21. He was given an anti-inflammatory injection and returned to his unit. *Id*. ¶ 22. The next morning, May 26, 2009 at 12:50 p.m., Plaintiff was again taken to the health care unit after complaining of increased swelling, pain and difficulty breathing. *Id*. ¶ 23. He was seen by Dr. Reeves (another Defendant), and given an injection for swelling and penicillin. *Id*. ¶ 24.

Plaintiff alleges that in the evening of May 26, 2009, he passed out, and Corrections Officers found him lying unconscious on the floor at 7:26 p.m. *Id.* 26-27. Nurse Rouleau was notified twice, and arrived at 7:50 p.m., allegedly 24 minutes after the first emergency call. *Id.* 28-32. While he was awaiting Nurse Rouleau's arrival, the Plaintiff experienced chest pains and labored breathing. *Id*. 31. Plaintiff alleges that Nurse Rouleau took his blood pressure and left without taking any further action, "despite his pleas to take his temperature and give him medical treatment." *Id.* ¶ 33. However, he states that three hours later, Nurse Rouleau filled out an examination report "where she states that she took his body temperature and it was 99 degrees, his pulse was 66, and his blood pressure was 130/77." *Id*. ¶ 35.

Later that night, at about 12:20 a.m. on May 27th, Plaintiff again experienced pain and difficulty breathing. At that time, his temperature was 101.5 degrees. He was transported to the emergency room at Detroit Receiving Hospital. *Id.* ¶¶ 36-38. It was determined that he had an infection which required aspiration of an infected tonsil. *Id*. ¶¶ 40-41. Ultimately, he "had two separate surgeries on his face, jaw, and neck to remove the entire infection and an emergency tracheotomy due to swelling in his throat." *Id*. ¶ 42.

Nurse Rouleau's affidavit is appended to her motion for summary judgment. She states that on Mary 26, 2009, she was one of two nurses at Mound Correctional Facility working in healthcare. *Rouleau Affidavit*, ¶¶ 3, 5. She states that the log book entry for that date indicates that at 7:30 p.m., "Wilson was still complaining to staff of breathing problems and that the reporting staff member telephoned control center Sergeant Bean and informed her of the problem." *Id.* ¶ 7.[1] She denies Plaintiff's allegation that when she examined him, she only took his blood pressure. She states she made a log entry at 8:45 p.m. indicating as follows:

> "[T]hat I saw Wilson regarding a complaint of jaw pain, for which I administered antibiotics, which had been ordered earlier that day. The electronic medical records indicate that my examination of Wilson revealed the following: Blood Pressure 130/77; Pulse 66; Respiration 18; Temperature 99; not diaphoretic." *Id.* ¶ 9.

She adds, "The records also indicate that in addition to the antibiotics I administered to Wilson, I provided him with two 325 mg Tylenol tablets." *Id.* Nurse Rouleau states that she does not recall being informed that Plaintiff lost consciousness for a time, but that he "was alert and responsive during my examination." *Id.* ¶ 10. She states that "Wilson's allegations that I fabricated vital statistics and that I never examined him are false. The records were not falsified and are based on my examination of Wilson." *Id.* ¶ 12.

Referencing Plaintiff's allegation at ¶ 34 of his complaint that she failed to move him to an observation area in his unit, Nurse Rouleau agrees that she did not order him moved, but states, "In my medical judgment, Wilson's condition did not require constant observation. Furthermore, the designated observation cells located directly across from the officer's desk in the housing unit, by policy, are used when a prisoner exhibits

---

[1] A copy of the log notes for that time period is attached to Rouleau's affidavit.

suicidal or self-injurious behavior." *Id.* ¶ 11.

In his response, Plaintiff asks that this motion be stayed so that he can obtain discovery as to whether a Sgt. Black and an Officer Martin found him unconscious on the date in question, and whether Nurse Rouleau was so informed before she examined him. He concedes that when Nurse Rouleau arrived, he "was awake, but lying on the bed gasping for air." *Plaintiff's Response* [Doc. #39], p. 3.

In response to Nurse Rouleau's statement that she did not falsify any medical reports, Plaintiff refers to a criminal complaint he filed with the Michigan State Police after he was released on parole, in which he accused Rouleau of "vulnerable adult abuse and including false or inaccurate information in [his] medical record." (Exhibit D to Plaintiff's Response). Plaintiff claims that "the State Police detective also believes what Nurse Rouleau did was wrong." However, the actual police report (Plaintiff's Exhibit D) merely states that the *Plaintiff* believed that what the nursing staff did was wrong: "After a review of the documents, it is determined that there is no apparent criminal act involved in this complaint. The complainant admitted that he really doesn't see a crime, but believes what the nursing staff did at the Mound Correctional Facility was wrong."

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must

determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.    DISCUSSION

#### A.    Eighth Amendment

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50

L.Ed.2d 251 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*  Deliberate indifference may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation.  *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976).  *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

It is undisputed that Plaintiff meets the objective component of a deliberate indifference claim, in that he has demonstrated a sufficiently serious medical condition. It is on the subjective component, however, that his claim falters.

According to the Plaintiff, Nurse Rouleau responded to his request for medical assistance 24 minutes after the first call. While Plaintiff would undoubtedly have

preferred a quicker response, that amount of time does not *per se* make out a case of deliberate indifference. While a delay in treatment can, depending on the facts, amount to deliberate indifference, it does not in this case. Plaintiff has offered no evidence that a delay of less than one half-hour resulted in a worsening of his condition or that a quicker response by Nurse Rouleau would have obviated the need for surgery.

Plaintiff's contention that Nurse Rouleau's decision not to place him in a designated observation area constitutes deliberate indifference is without merit. Apart from the question of whether the observation area was designated for suicidal inmates, Plaintiff has not rebutted Rouleau's statement that "In my medical judgment, Wilson's condition did not require constant observation." *Rouleau Affidavit*, ¶ 11.

Nor has the Plaintiff shown that Nurse Rouleau fabricated medical records or offered anything substantial in rebuttal of her statement in her affidavit that she did not fabricate records. Instead, he offers only two factors that he claims create an issue of fact as to the alleged falsification of records. First, relying on medical notes, he posits that because he was recorded as having an elevated temperature of slightly over 101 degrees both six hours before Nurse Rouleau's examination and shortly after her examination, it would be improbable that he would have a temperature of 99 degrees in between those readings. Yet, he offers no medical evidence to support his theory, which seems to be based on nothing more than his own layman's opinion. Nor does he discuss the possible effects of medication that was administered at his 1:30 p.m. examination on May 26th, specifically Acetaminophen and Penicillin. (*See* Exhibit A to Plaintiff's Response).

Secondly, Plaintiff claims incorrectly states that the Michigan State Police agreed that Nurse Rouleau had done something wrong. *See* Plaintiff's Exhibit D, which completely fails to support this statement.

Finally, Plaintiff requests that this motion be stayed so that he can obtain discovery as to whether a Sgt. Black and an Officer Martin found him unconscious on the date in question, and whether Nurse Rouleau was so informed before she examined him. However, in terms of the Eighth Amendment issue of whether Rouleau was deliberately indifferent to his medical needs, those facts are largely irrelevant. Nurse Rouleau states in her affidavit that the Plaintiff was "alert and responsive" during her examination, and the Plaintiff concedes that he was awake when Rouleau arrived.

It appears that the Plaintiff's real complaint is that Nurse Rouleau failed to appreciate and properly diagnose the severity of his condition. Even if that were the case, however, that would at most amount to medical negligence, which is not actionable in an Eighth Amendment claim. . *Estelle, supra*, 429 U.S. at 106; *Westlake v. Lucas, supra*.

Because the Plaintiff has failed to show a genuine issue of fact as to his claim of deliberate indifference, summary judgment should be granted in Defendant Rouleau's favor.

### B.   Gross Negligence

Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. §691.1407(2)(c); *Maiden v. Rozwood*, 461 Mich. 109, 122, 597 N.W.2d 817 (1999). This is an extremely difficult standard to meet, and ordinary negligence or carelessness will not suffice. In *Tarlea v. Crabtree*, 263 Mich.App. 80, 90-92, 687 N.W.2d 333 (2004), the court described "gross negligence" as follows:

> "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not

-8-

> require one to exhaust every conceivable precaution to be considered not negligent.
>
> "The much less demanding standard of care-gross negligence-suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge."

Thus, even if it can be said that Nurse Rouleau could have done more, or that she underestimated the severity of Plaintiff's medical condition, she did conduct an examination and prescribe medication, including antibiotics, on the basis of that examination. Whatever liability she might have in a medical malpractice claim, no objective observer could conclude that she was grossly negligent.

## IV. CONCLUSION

For these reasons, I recommend that Defendant Ruth Rouleau's Motion for Summary Judgment [Doc. #32] be GRANTED, and that the complaint against her be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate

Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 23, 2013


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 23, 2013.

| | |
|---|---|
| Ryan A. Wilson<br>23456 Vance Avenue<br>Hazel Park, MI 48030 | s/Johnetta M. Curry-Williams<br>Case Manager |